956 F.2d 274
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ruth GRIJALVA, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS;
National Steel & Shipbuilding Co., Respondents.
NATIONAL STEEL & SHIPBULDING COMPANY, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; Ruth
Grijalva, Respondents.
 Nos. 90-70489, 90-70503.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1991.
Decided Feb. 24, 1992.
 
 Before FLETCHER, D.W. NELSON and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Appellant Ruth Grijalva appeals the Benefits Review Board's ("BRB") denial of her claim for disability benefits under the Longshore and Harbor Workers' Compensation Act ("Longshore Act"). National Steel & Shipbuilding Company ("NASSCO") cross-appeals the BRB's finding regarding collateral estoppel. While an employee of NASSCO, Grijalva was injured in and eventually terminated because of her participation in a fight with another worker. Both the administrative law judge and the BRB agreed that Grijalva was neither entitled to disability benefits under the Act nor discriminated against by NASSCO. The BRB reversed the ALJ's finding, however, that Grijalva was barred by virtue of collateral estoppel from bringing a claim for benefits under the Longshore Act because an arbitrator in an earlier proceeding had conclusively determined that she was the aggressor in the fight. We affirm the BRB. NASSCO offered substantial evidence that Grijalva was not entitled to benefits because she had incurred her injuries while willfully attempting to injure another person. Grijalva also completely failed to offer any evidence that NASSCO fired her with discriminatory animus. Because we affirm the BRB's decision on the merits, we need not reach the issues presented in NASSCO's cross-appeal.
 
 STANDARD OF REVIEW
 
 3
 "The ALJ's decision is reviewed by the BRB under the 'substantial evidence' standard. 33 U.S.C. § 921(b)(3)." Todd Shipyards Corp. v. Black, 717 F.2d 1280, 1284 (9th Cir.1983), cert. denied, 466 U.S. 937 (1984). Under the provisions of the Longshore Act, the BRB must accept the ALJ's findings unless they are contrary to law, irrational, or unsupported by substantial evidence. In turn, the court of appeals reviews BRB decisions for "errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations." Bumble Bee Seafoods v. Director, Office of Workers' Compensation Programs, 629 F.2d 1327, 1329 (9th Cir.1980). "The reviewing court's function is exhausted when it appears that there is warrant in the evidence and a 'reasonable legal basis' for the Board's award." Cordero v. Triple A Machine Shop, 580 F.2d 1331, 1333 (9th Cir.1978) (citation omitted), cert. denied, 440 U.S. 911 (1979).
 
 DISCUSSION
 
 4
 1. Denial of Grijalva's Claim for Compensation
 
 
 5
 The Longshore Act presumes, in the absence of substantial evidence to the contrary, that a claim for compensation falls within the provisions of the Act. 33 U.S.C. § 920(a). This presumption "follows from the overall humanitarian statutory policy that all doubtful questions of fact be resolved in favor of the injured employee." Parsons Corp. v. Director, Office of Workers' Compensation, 619 F.2d 38, 41 (9th Cir.1980).
 
 
 6
 At the same time, however, the Longshore Act specifically exempts from coverage injuries "occasioned solely ... by the willful intention of the employee to injure or kill himself or another." 33 U.S.C. § 903(b).[1] While the Act also contains a presumption that an employee's injury did not occur through a willful intention to injure another, 33 U.S.C. § 920(d), this presumption is not absolute. Rather, it may be rebutted if the contesting employer can produce substantial evidence to the contrary. "Substantial evidence as used in the Longshore Act is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Parsons, 619 F.2d at 41 (quoting Matter of District of Columbia Workers Compensation Act, 554 F.2d 1075, 1084 (D.C.Cir.), cert. denied, 429 U.S. 820 (1976)).
 
 
 7
 Employing this deferential standard of review, we conclude that NASSCO has produced sufficient evidence for a reasonable ALJ to conclude that Grijalva attacked another worker, Carlos Ulloa, with the intent to injure him. Grijalva insists, however, that the only evidence that NASSCO has produced to counter her contention that Ulloa started the fight is his self-serving testimony that she started the fight. To support her version of events, she also points to the fact that Ulloa had been involved in previous fights, that immediately after the fight she asked two employees why they had not come to her assistance, and that Ulloa said after the fight to keep Grijalva away from him or he would hit her again. Finally, she argues that it would be "absurd" to assume that a woman four inches shorter and fifty pounds lighter than her opponent would enter into an altercation with the intent to injure him.
 
 
 8
 However, the ALJ did not rely solely on Ulloa's testimony in finding that Grijalva acted with intent to injure. He also relied on the fact that Ulloa had visible injuries following the altercation while Grijalva had none. He also gave credence to the testimony of two witnesses who appeared on the scene toward the end of the fight. These witnesses apparently saw Ulloa holding Grijalva away from him while she attempted to swing at him, heard Ulloa tell Grijalva to get out and leave him alone, and saw Ulloa push or kick Grijalva out the door of his office. Finally, based on his observations of Grijalva's demeanor and the inconsistencies in her story, the ALJ concluded that Grijalva was not credible. "Where the ALJ relies on witness credibility in reaching his decision, our court will interfere only where the credibility determinations conflict with the clear preponderance of the evidence ... or where the determinations are 'inherently incredible or patently unreasonable.' " Cordero v. Triple A Machine Shop, 580 F.2d 1331, 1335 (9th Cir 1978) (citation omitted), cert. denied, 440 U.S. 911 (1979). In sum, the combination of Ulloa's testimony, the physical injuries, the testimony of the eyewitnesses, and Grijalva's lack of credibility constitute sufficient warrant in the evidence to justify the denial of benefits.
 
 
 9
 The two cases upon which Grijalva relies are readily distinguishable from the instant case. In Arrar v. St. Louis Shipbuilding Co., 780 F.2d 19 (8th Cir.1985), the claimant observed an employee named Batts knock another employee unconscious with a wrench. When Arrar attempted to intervene, Batts struck him twice and injured him. The only evidence offered to rebut Arrar's version of events was the testimony of Batts that Arrar grabbed him, which the court concluded could mean that Arrar was trying to stop the fight as easily as it could mean that Arrar was trying to injure Batts. Similarly, in Rogers v. Dalton Steamship Corp., 7 BRBS 207 (1977), the only evidence that the employer presented to rebut the claimant's testimony was the fact that the claimant had moved a fellow employee out of the way as he approached the employee who eventually struck and injured him. In contrast to Arrar and Rogers, NASSCO presented a much more substantial degree of evidence: Ulloa's physical injuries and the testimony of two witnesses that Grijalva was behaving aggressively. Moreover, the ALJ did not question the credibility of the claimant in either Rogers or Arrar.
 
 
 10
 Because the ALJ's findings were neither irrational nor unsupported by substantial evidence, the BRB correctly accepted his findings and affirmed his decision. Because we are required to affirm if there is warrant in the evidence for the BRB's position, we affirm the BRB.
 
 
 11
 2. Denial of Grijalva's Discriminatory Discharge Claim
 
 
 12
 Section 49 of the Longshore Act provides that "it shall be unlawful for any employer ... to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim compensation...." To be successful, a section 49 claim must have two elements. "First, an employer must commit a discriminatory act, 'the essence of [which] lies in the different treatment of like groups or individuals.' " Holliman v. Newport News Shipbuilding & Dry Dock Co., 852 F.2d 759, 761 (4th Cir.1988) (quoting Dickens v. Tidewater Stevedoring Corp., 656 F.2d 74, 76 (4th Cir.1981). Second, "the discriminatory act must be motivated by animus against the employee because of the employee's pursuit of his rights under the Act. This second requirement of a section 49 claim is satisfied even if the employer's action is only partially motivated by an employee's exercise of his rights...." Geddes v. Benefits Review Board, 735 F.2d 1412, 1415 (D.C.Cir.1984); see also Jaros v. National Steel & Shipbuilding Co., 21 BRBS 26 (1988). The employee need not prove these elements by virtue of a preponderance of the evidence; instead, "a lesser standard suffices." Id. at 1416. This lesser standard requires that doubtful inferences be resolved in favor of the claimant.
 
 
 13
 Grijalva makes three arguments in support of her claim that the ALJ and the BRB erred in their rejection of her discrimination claim. First, she contends that because she had filed a notice of injury form before she was fired, her termination was a per se violation of Section 49. This argument lacks merit: in order to bring a successful action under section 49, the claimant must show that the employer had a discriminatory motive for the termination. The employer cannot be forced to suspend all usual personnel practices simply by virtue of the fact that an employee has filed a claim for compensation.
 
 
 14
 Grijalva's second contention is that NASSCO was guilty of a section 49 violation because NASSCO violated its own customary termination practices for employees charged with violating the prohibition against disorderly conduct. However, Grijalva has offered no convincing evidence to support this allegation. For example, she cites Ronald Webb's deposition as support for the argument that she was treated differently than other employees, but Webb clearly stated that NASSCO terminates employees who initiate or are willing participants in fights.[2] (ER, Exhibit 10, p. 21). Indeed, Grijalva concedes this point in her brief. Because the ALJ was justified in concluding that Grijalva was at the very least a willing participant in the altercation with Ulloa, Grijalva has failed to show either that NASSCO treated her differently than other similarly situated employees or that NASSCO acted with discriminatory animus.
 
 
 15
 Finally, Grijalva claims that she was discriminated against vis a vis Ulloa because no disciplinary action was taken against Ulloa following the fight. This argument is entirely without merit for the simple reason that Ulloa was not an employee of NASSCO. Furthermore, Grijalva has failed to offer sufficient evidence that NASSCO had any control over the personnel practices of Ulloa's employer or that Ulloa was subject to the same rules of conduct. We affirm the BRB's finding that there was no section 49 violation.
 
 
 16
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The 1984 amendments to the Longshore Act renumbered this provision to 33 U.S.C. § 903(c)
 
 
 [2]
 Grijalva's other attempts to prove discriminatory treatment are equally unsuccessful. For example, she claims in her brief that two supervisors engaged in a fistfight but were not terminated. However, Webb states in his deposition that the fight did not occur in the shipyard