**James L. BURTON, Petitioner,**

v.

**STEVEDORING SERVICES OF AMERICA; Director, Office of Workers' Compensation Programs, Respondents.**

No. 98–70580.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 3, 1999.

Decided Nov. 19, 1999.

Meagan A. Flynn, Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland, Oregon, for the petitioner.

Dennis R. VavRosky, VavRosky, Mac-Coll, Olson, Busch & Pfeifer, Portland, Oregon, for the respondents.

Before: Fernandez, T.G. Nelson, and Thomas, Circuit Judges.

FERNANDEZ, Circuit Judge:

James L. Burton petitions for review of an order of the Benefits Review Board (BRB or Board) on March 23, 1998, which affirmed the setting of his benefits at a nominal amount. He claims that the proceedings after September 11, 1996, were a nullity, and as a result an August 9, 1993, determination by the Administrative Law Judge, which set his compensation at a much higher level, is the existing award.

We agree with Burton and grant his petition.

## BACKGROUND

Burton was injured in the course of his employment with Stevedoring Services of America. He sought benefits, and on August 9, 1993, the ALJ found in his favor and made a substantial award—$257.27 per week. Stevedoring Services and its insurer, Eagle Pacific Insurance Company, (collectively SSA) promptly appealed the determination to the BRB. There the case languished until September 12, 1996, when the BRB issued a "Decision and Order" overturning the ALJ's determination and remanding for further proceedings. The ALJ then issued a new determination on March 3, 1997, in which he reduced Burton's award to a nominal amount—$7.71 per week. On March 23, 1998, the BRB issued a "Decision and Order" affirming the latter determination. This appeal followed.[1]

## JURISDICTION AND STANDARDS OF REVIEW

In general, we have jurisdiction over petitions to review decisions by the BRB. *See* 33 U.S.C. § 921(c). Petitions for review must be brought within 60 days after the BRB's decision becomes final. *See id.*

▪ As will appear, however, the determinative issue in this case involves statutory construction. In proper circumstances, we, of course, owe deference to an agency's construction of a statute which it administers. *See INS v. Aguirre–Aguirre,* 526 U.S. 415, 119 S.Ct. 1439, 1445, 143 L.Ed.2d 590 (1999); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). More particularly, as we have said:

> In interpreting a statute we must examine its language. If "the statute is clear and unambiguous, that is the end of the

matter." There is no need to look beyond the plain meaning in order to derive the "purpose" of the statute. At least there is no need to do so when the result is not absurd.

> If the language is not clear, Congress's intent must still be ascertained.... "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."

> If, however, the statute is ambiguous, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." And the "agency's interpretation of a statute that it is entrusted to administer is entitled to considerable weight unless it is 'arbitrary, capricious, or manifestly contrary to the statute.'"

*Tang v. Reno,* 77 F.3d 1194, 1196–97 (9th Cir.1996) (citations omitted). In the case at hand, it should also be pointed out that on matters of statutory construction we do respect reasonable interpretations by the BRB, but we defer " 'to the statutory interpretations of the Director of the Office of Workers' Compensation Programs.'" *Metropolitan Stevedore Co. v. Brickner,* 11 F.3d 887, 889 (9th Cir.1993) (citations omitted).

## DISCUSSION

▪ The BRB's decision of March 23, 1998, which affirmed the March 3, 1997, determination of the ALJ, necessarily hinged on the validity of the Board's order of September 12, 1996, which set aside the ALJ's determination of August 9, 1993. As we will show, the September 12, 1996 order was ineffective. Rather, the ALJ's determination of August 9, 1993 was affirmed, and is now final.

That conclusion follows as a matter of simple statutory construction. When Con-

---

**1.** We do not set forth the facts regarding the injury and Burton's lost earnings, if any, be- cause those are not pertinent to the decision of this appeal.

gress passed the Department of Labor Appropriations Act of 1996, P.L. No. 104–134, 110 Stat. 1321 (Appropriations Act), it declared in § 101(d):

> Provided further, That any ... decision pending a review by the Benefits Review Board for more than one year shall, if not acted upon by the Board before September 12, 1996, be considered affirmed by the Benefits Review Board on that date, and shall be considered the final order of the Board for purposes of obtaining a review in the United States courts of appeals....

That language appears to be perfectly clear and unambiguous. The BRB had to act on cases pending before it *before* September 12, 1996, if they had been pending for over a year. If it did not do so, the decision was "affirmed" on September 12, 1996, and was "the final order of the Board" for review purposes. That is to say, the instant that September 11, 1996, ended and September 12, 1996, began, the ALJ's decision of August 9, 1993, regarding Burton was affirmed because review of his case had been pending for over a year.

We do not see how "before" in this context can mean anything but previous to in time, or earlier, or preceding in time, or any other locution one could use to say that something must happen prior to a certain date. It can hardly be taken to mean, "on the mentioned date." In fact, Congress' very language distinguished between "before" and "on," for it said that if the decision was not made *before* September 12, 1996, the decision was deemed affirmed *on* September 12, 1996.[2]

▮ SSA contends that adopting that view would be a violation of the statutory

purpose or an absurdity. We think not. No doubt those are exceptions to giving a statute a plain reading. *See Tang*, 77 F.3d at 1197; *Commodity Futures Trading Com'n v. P.I.E., Inc.*, 853 F.2d 721, 725 (9th Cir.1988). But our reading actually fosters the purpose of Congress, which was to eliminate the Board's backlog. *See Ramey v. Stevedoring Servs. of America*, 134 F.3d 954, 957 (9th Cir.1998). Moreover, if choosing one cut-off date rather than another seems somewhat arbitrary, that does not make it absurd. Nor does it undercut Congress' desire to have matters conclude at some specific time.

When faced with a similar kind of provision, the Supreme Court has rejected the notion that " 'prior to December 31 of each year' " should be read to mean " 'on or before December 31.' " *United States v. Locke*, 471 U.S. 84, 93, 105 S.Ct. 1785, 1791, 85 L.Ed.2d 64 (1985). As it said, "[i]t is clear to us that the plain language of the statute simply cannot sustain the gloss appellees would put on it." *Id.* The Court went on to say:

> While we will not allow a literal reading of a statute to produce a result "demonstrably at odds with the intentions of its drafters," with respect to filing deadlines a literal reading of Congress' words is generally the only proper reading of those words. To attempt to decide whether some date other than the one set out in the statute is the date actually "intended" by Congress is to set sail on an aimless journey, for the purpose of a filing deadline would be just as well served by nearly any date a court might choose as by the date Congress has in fact set out in the statute.

*See* Appropriations Act § 101(d). However they are construed, the provision at hand stands on its own, and nothing in them converts the meaning of the word "before" into something else. If anything, they fortify Congress' demand that cases before the Board be resolved by the Board or by operation of law within a year. Burton's case had been pending much longer than that.

---

**2.** We are, of course, aware of the language surrounding the portion which we have quoted. That language precludes spending funds to review cases, which have been pending for more than 12 months, after September 12, 1996, and further directs that beginning on September 13, 1996, the Board shall have one year after a case is brought to it to make a decision. We do not find that those separate restrictions make the one at hand ambiguous.

*Id.* at 93, 105 S.Ct. at 1792 (citations omitted).

And to a suggestion that there was something unfairly arbitrary about the choice of the penultimate day of the year, the Court replied that, " '[d]eadlines are inherently arbitrary,' while fixed dates 'are often essential to accomplish necessary results.' Faced with the inherent arbitrariness of filing deadlines, we must, at least in a civil case, apply by its terms the date fixed by the statute." *Id.* at 94, 105 S.Ct. at 1792 (citations omitted). The same is true here. While Congress could have said "on or before," it did not; it said "before" and that means that September 12, 1996, was not one of the set of dates on which the Board could act.

Were we in any doubt, we are further confirmed in our opinion by the fact that the Director, OWCP, to whom we do owe deference, agrees with our interpretation. *See Director, OWCP v. Sun Ship, Inc.,* 150 F.3d 288, 290 (3d Cir.1998). Moreover, we agree with the one circuit that has directly confronted this issue. *See id.* at 290–92.[3]

In *Sun Ship,* the BRB purported to reverse and remand an ALJ's decision on September 12, 1996, but the case had been pending before it for over a year. *See id.* at 290. The Director appealed, and the court noted that it ordinarily would not have jurisdiction over the remand order because it was, in effect, interlocutory. *See id.* at 291.

But, said the court, it could consider the appeal because "it is clear that the Board's decision is void if it did not comply with the Appropriations Act." *Id.* And, it said, "the Board's interpretation is contrary to the express language of the Appropriations Act." *Id.* at 292. The court continued: "It is difficult to imagine how Congress could have more clearly established the Board's deadline for acting." *Id.* Finally, it concluded, "[o]n September 12, 1996 this case had been pending before the Benefits Re-

view Board for more than three years. The Board failed to act *before* September 12, and its subsequent decision *on* September 12 is, therefore, a nullity under the Act." *Id.* We fully agree.

Therefore, we hold that the BRB's "Decision and Order" of September 12, 1996, and the proceedings which followed it, are a nullity. Thus, we have no occasion to review them. Moreover, as of that date the ALJ's determination of August 9, 1993, was "considered affirmed by the Benefits Review Board ... and ... considered the final order of the Board for purposes of obtaining a review" in this court. Appropriations Act § 101(b). No petition for review of that decision was filed within the 60–day period. *See* 33 U.S.C. § 921(c). Thus, we will not review the merits of the August 9, 1993, determination by the ALJ. That determination stands as *the* determination of Burton's rights.

## CONCLUSION

We conclude that Congress' use of the straightforward word "before" was no amphilogism. We do not think that laypersons, literati, or linguists would have difficulty deciding that "before" means "prior to" rather than "on." Nor should legists. Thus, we hold that because Burton's case was pending before the BRB for more than a year and was not acted on by that body on or before September 11, 1996, the ALJ's determination of August 9, 1993, was deemed affirmed at the instant that September 11, 1996, came to a close and September 12, 1996, commenced. As a result, the Board's contrary action on September 12, 1996, was a nullity, as were the actions taken thereafter which hinged on it, including the ALJ's determination of March 3, 1997, and the Board's decision of March 23, 1998. Therefore, we grant Bur-

---

**3.** We have not specifically addressed the issue, although we have had occasion to apply the provisions of the Appropriations Act. *See*

*Jones Stevedoring Co. v. Director, OWCP,* 133 F.3d 683, 687 (9th Cir.1997).

ton's petition to vacate the ALJ's and Board's contrary decisions.

Petition GRANTED.